Thank you, Your Honors, and good morning. May it please the Court, my name is Graham Archer with the Federal Public Defender's Office on behalf of Appellant David Salgado-Ramiro. If I may, I'd like to reserve two minutes for rebuttal. Your Honors, the Court in this case should remand to the District Court with instructions to grant Mr. Salgado-Ramiro's motion to dismiss because the 18-month delay involved in Mr. Salgado's case is attributable entirely to the government, and that delay caused actual prejudice to Mr. Salgado-Ramiro. The delay in this case was caused as a result of the government's failure to take any actions to bring Mr. Salgado-Ramiro before the Federal Court to face the charges that were laid against him. The government knew that Mr. Salgado-Ramiro was in the United States as of August 28th of 2014. They followed shortly thereafter with a criminal complaint, September 11th of 2014. And then, yet still approximately a year later, September 15th of 2015, they filed an indictment. They took no steps to lodge either a criminal detainer or to file a writ attempting to bring Mr. Salgado-Ramiro over from State custody. Now, the government argues that that was the result of an error on a checkbox on one of the following papers that accompanied the complaint and the issuance of the warrant. But in fact, the record in the San Jose courthouse and with the San Jose United States Attorney's Office is that as the court, the United States Supreme Court in Doggett has indicated, they have decided to gamble with what are considered low-priority cases. This is the case. Sotomayor, let's talk about that, because there's a reference to these San Jose cases, and you reference specifically, I think, Judge White making a comment regarding this sort of thing happening. Is that right? Can you tell me what you mean more fully? Certainly. The — I want to start off by saying that Mr. Salgado's case is a little bit factually distinct from the cases that were — that are addressed by Judge White, by Judge Davila, and Judge Ware. Tell me how. In those cases, the United States Attorney's Office had made a conscious decision — and that was the record before those courts — a conscious decision to permit a filing of a civil detainer as opposed to a criminal detainer. Ours is distinct in the sense that there was neither a civil nor a criminal detainer filed. Instead, with the issuance of — or with the filing of the complaint, that also triggered the issuance of a warrant from Judge Cousins on September 11th of 2014. That was what eventually caused Mr. Salgado-Ramiro to be taken into Federal custody, but only after he completed his State sentence. It is not the defense's position here today that the factual record is on all fours with the series of cases raised before the district judges previously, but it is relevant to this Court's consideration for — for who is at fault for the delay and the sort of — the level of negligence that would be required to allow this delay to occur. Were there any sort of official findings made by the judges, either Judge White or any other judge in those cases, that would support that faith? So as is quoted in our briefs, there was — there was certainly a finding that the United States Attorney's Office in San Jose was failing to comply with the requirements of 18 U.S.C. 3161J that would require them that once they were aware of the presence in custody of a defendant to then either lodge a criminal detainer or file a writ. And in this case, Mr. Salgado-Ramiro was discovered, and this is — this is imputed to the government because it's in the actual complaint filed on September 11th of 2014 that Mr. Salgado-Ramiro was detected because his fingerprints were — were found as part of the Monterey County booking procedures. He remained, of course, in continuous custody of — of Monterey County and then post-sentencing into the California Department of Corrections and Rehabilitation. He was — he was, first of all, discovered. His custody status never changed. And there's no indication that the government took any steps to either verify that he was — Counsel, Judge Gould. Yes, Your Honor. So it looks to me like the government may have been negligent and also that he has — if we take the time as running from the first time, there's an arrest warrant. Then he has 18 months. But if there's an 18-month delay, assuming we'd run it from that rather than from the actual indictment, doesn't he have to show some significant prejudice under the speech? So I wanted you to elaborate on your prejudice theory and what elements of it do you think are substantial and not speculative? Yes, Your Honor. I'd be happy to. I'd like to address that in two parts. First, the prejudice that he suffered was — was not speculative. I'll address that in a moment. But the prejudice that he suffered was a loss of potential concurrent time. And as the Supreme Court decided in 1968 in Smith v. Hooey, that is a — that is an attributable basis for actual prejudice. And the issue here — and it's sort of an interesting question that the Court raises, and it's — it's interesting that the government so argues that this prejudice is speculative. It's interesting because the government's delay itself rendered that prejudice uncertain, because the primary prejudice that — that we're addressing here today is the inability of him to — to be granted concurrent time from his State sentence imposed by Monterey County. Now, Mr. Salgado-Ramiro, of course, cannot establish that that was a certainty because he was never aware of the existence of the federal criminal procedure. So it's something that is rendered — and I certainly hesitate to suggest that or agree that it — that it's speculative, but to the degree that it's an uncertain level of prejudice, it's — Well, if I can — it seems like the — it's not required to impose concurrent sentences. Is that right? It's not. Okay. And if I recall correctly, the record reflects that your client made and highlighted that argument for the district court judge at sentencing in seeking some, you know, downward variance or departure on that basis. So why — I guess doesn't that undercut your prejudice? Only as to the district court, Your Honor. The — the district court did address the defense's request for a downward departure of variance pursuant to 2L1.2, note 6, to take in account some of the State court time. But the actual prejudice is also inclusive of the State court's ability to then impose that sentence concurrent to an ensuing Federal sentence. And frankly, as a practical matter, if the State court were aware that Mr. Salgado-Ramiro were facing a significant Federal sentence, one that in actual time would significantly outstrip, in terms of months, the State sentence ultimately imposed, that's something that the State court can consider in either running a State sentence concurrent or potentially reducing the amount of time spent in State prison. So just help me with the sequence here as to why the State court would have been able to do a concurrent sentence. What was the timing or what was the sequence? The sequence was the — the complaint was filed September 11th of 2014. Mr. Salgado-Ramiro then went through criminal proceedings for approximately three months. In State court? In State court, in Monterey County. And then he was sentenced and committed to CDCR and served the balance of his sentence there until, on March 2nd of 2016, his sentence was completed in State court. At that time, prior to his release, they looked in Kletz, found the warrant, and then turned him over to be transported to Federal court, where he made an appearance in the Central District — or, sorry, Eastern District of California. If anybody — But, counsel — Yes, Your Honor. Is your prejudice theory the same, even if we determined that under the Supreme Court's Marion case, the delay was only six months, you know, from either indictment or arrest rather than the warrant? It is the defense's assertion that the prejudice remains the same and that the delay, which was — which was a little bit over six months when he actually appeared in the Northern District to face the charges, the — that delay is sufficient to trigger the Barker-Wingo balancing act — or balancing factors and is sufficient with the actual prejudice of the loss of concurrent time to warrant a dismissal of the indictment. Okay. Thank you. Thank you. Good morning again, Your Honors. Jonas Lerman for the United States. I'd like to focus on two points, prejudice and this policy or practice point. So starting with prejudice, there was absolutely no cognizable prejudice here within the meaning of the Sixth Amendment and this Court's Sixth Amendment jurisprudence. In fact, as the defense has now conceded, the defendant benefited from the delay here in the form of a lower guidelines range. So that was the only form of prejudice that they alleged in their motion to dismiss and in their reply to the government's opposition. They've now on appeal, in their reply brief here, conceded that they were wrong about that, that in fact, because of the government's delay, the defendant was sentenced after the November 2016 amendments to the guidelines and the bottom end of his guidelines range dropped by 17 months. Now, that's roughly equivalent to the entire time he spent in state custody, both pre- and post-conviction, for these unrelated sexual assault crimes. So he spent 18 months and two days, if you take the pre- and post-conviction state custody time, that's nearly the same as the 17-month benefit he got from the guidelines range drop. Post-conviction in state court, he only spent 15 months in prison, so that's less than the benefit he received. So I want to be really clear about this, because this guidelines issue also takes care of this concurrent sentence claim. Because even if the government had done exactly what the defense says we should have done here and ridded the defendant over immediately after we filed the criminal complaint and convicted him and gotten him sentenced in federal court immediately, then sent him back to the state court, even if we had somehow managed to do that in the three-month window between the federal criminal complaint and his state sentencing, so again, that was September 2014 to December of 2014, even if all those things could have happened in that three-month window, and we'd sent him back to state court, and even if you accept the wild speculation that a state judge would have imposed a fully concurrent sentence here, and again, there's no reason to think that a state judge would have done that for these pretty grisly sex crimes, even if you accept all that, the defendant would still be in the same position he is here because of the amendments to the guidelines. And the 17 month benefit, as you characterize it, does that account for the fact that the defendant accrued additional criminal history and was elevated in the criminal history category by the fact of this earlier conviction? Yes, it does, and the defense has conceded that. So even with the higher criminal history category that he has because of the state conviction, even with that, he has a lower guidelines range because of the amendments to the guidelines. And because none of the other Barker factors weigh heavily in his favor here, Your Honors, the district court was correct that there was no Sixth Amendment violation. And, you know, even if, she said, even if the Sixth Amendment speedy trial clock runs from the point of complaint, that 18-month period still doesn't weigh heavily enough in his favor to merit the extreme remedy of dismissing the indictment here. Now, on the policy and practice point, I also want to be just really crystal clear about this. The U.S. Attorney's Office has no policy or practice of intentional delay in 1326 cases or any other kind of case. And you don't have to take my word for it because you have a finding from Judge Beth Freeman here. She reviewed the whole record. She looked at these old cases, and she found that this claim just wasn't true. She said, based on the record presented here, this court cannot find a practice of delay by the U.S. Attorney, and the cases cited by the defense, quote, cannot be interpreted to establish a practice of delay. And instead, she found that the delay here resulted from nothing other than simple negligence and that it didn't weigh heavily in the defendant's favor in the Barker analysis. Now, that determination by Judge Freeman, this court reviews that determination for clear error. That is the standard you've applied again and again, including in the Beeman case or in the Alexander case from last year, which we cite in our brief. He talked about how that finding by a district judge about the cause of a delay is entitled to considerable deference. And there's nothing in this record that would support overturning that finding as clearly erroneous. What – explain Judge White's comment, then, because it was referred to in the briefing. So I'm trying to understand what the U.S. Attorney's Office then was doing in San Jose. Sure. So this requires going back to 2009 in the Castro case, which I think was sort of the genesis of some of the confusion about this. In the Castro case, the defense included a motion hearing transcript from that case in the record here. That's also in the record on appeal. And there, the district judge, and that was Judge James Ware, he had some concerns because the defense in that case had claimed really the same claim that the defense is making here, that the U.S. Attorney's Office was skirting its obligations by, in that case, using administrative detainers rather than criminal detainers because criminal detainers trigger certain rights under the Interstate Agreement on Detainers Act. The district court had a hearing about this. The now chief of the San Jose branch of the U.S. Attorney's Office came and explained how ICE uses administrative detainers and not criminal detainers and why they do that. And one of the reasons is that the vast majority of defendants who ICE comes into contact with, if they're in state custody, the federal government doesn't actually end up criminally prosecuting them. But ICE has its own reasons for using administrative detainers, but it's not for purposes of a delay. The chief of the San Jose branch was very clear about that. And after hearing all these explanations, and it was a lengthy hearing, the district judge denied the motion to dismiss in that case, denied the motion for reconsideration, and he said in his order denying the motion for reconsideration, there's no evidence here that the U.S. Attorney's Office is discriminating against 1326 defendants or that it's trying to disadvantage them in any way. So that was the Castro case. Then we have Noguesta-Piño, and this was the case with Judge Ronald White. There the claim was that the U.S. Attorney's Office was intentionally violating 18 U.S.C. 3161J, and that statute talks about how once the government becomes aware that someone they're federally prosecuting is in state custody, they should move promptly. That's the word used in the statute. They should move promptly, either to writ the person over or file a detainer. But this Court has held in Valentine that the requirement of promptness in 3161J is too indefinite and subjective to be described as a time limit, and that Valentine case is cited in our brief as well. So there is this line from Judge White in the Noguesta-Piño order where he talks about how the U.S. Attorney's Office, quote, apparently had a policy of not complying with 18 U.S.C. 3161J, but it's unclear what he was referring to there, and it certainly doesn't count as a factual finding, and that's what Judge Freeman said in her order in this case. She said that there was not a factual finding in any of these cases relied on by the defense. And Judge White goes on to say in that order, however, the government did not choose to ignore its obligations in bad faith or for the specific purpose of penalizing Noguesta by impairing his ability to present a defense. So again, Judge Freeman looked at these cases. She looked at these cases and she said they cannot be read to establish a pattern or practice of intentional delay by the U.S. Attorney's Office. Sotomayor So what happened here? Was it negligence? Was it oversight? I mean, what happened here? It was negligence. We concede it was negligence. But again, if we're talking about the loss of opportunity to make a request for concurrent time to the district judge, that only the only negligence there was the three-month window between the government's complaint and his sentencing in State court. I think the real negligence here on the part of the government, if there was any, was between when we filed the criminal complaint and the five-month and 21-day delay between then and when we brought him over for his initial appearance in federal court. And I think, you know, the trial AUSA said, you know, that was an oversight on our part and we sort of dropped the ball on that. But, you know, Judge Freeman considered this full record and she said there wasn't anything here beyond simple negligence. And under this court's case law, you know, that doesn't weigh heavily in the Barker four-factor analysis. And so your current policy now, what do you have in place? What mechanism, if any, to guard against this? Well, as we explain in our answering brief, the typical, I shouldn't say the typical practice because I don't know how typical it is, but certainly in many 1326 cases, we writ the people over. But here, on the facts of this case, we would have had, like I said before, we would state sentencing, and this court has never held in any case involving similar facts that the government has that sort of obligation just to try to help the defendant get a better sentence in an unrelated state case. Unless the court has other questions, I will sit down. All right. Thank you very much. And, Your Honors, I think I've nearly run through my time, but I did just want to point out the government, it's interestingly in its opposition brief here, notes several cases where they did actually writ someone over and yet still argues that there's been no change of policy, that it's always been consistent, that there has been no consistent failure to comply with 18 U.S.C. 3161J. So, that's all. Thank you. Thank you both for your arguments here. In this case, United States of America v. David Salgado-Ramiro will now be submitted. Thank you.
judges: Gould, Murguia, Freudenthal